**So Ordered.**

**Dated: February 4th, 2020**



_Frederick P. Corbit_
**Frederick P. Corbit**
**Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>COUNTRY MORNING FARMS, INC., AND COUNTRY MORNING FARMS CATTLE, LLC,<br><br>Debtors. | Case No. 19-00478-FPC11<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING CRAM-DOWN INTEREST RATE |

THIS MATTER came before the court on the Confirmation Hearing which

took place on January 16, 2020 (ECF No. 564). The court reviewed the files and

records herein including pleadings filed in connection with the supplemental

telephonic hearing held on February 4, 2020, heard argument of counsel and

testimony from Kevin Gilbert and Lucas Kartic, is fully advised in the premises, and

enters the following findings of fact and conclusions of law.

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1.       The Debtors and Bank of the West (the "Bank") disagree on the

appropriate cram-down interest rate that should be used in the Debtor's proposed

plan of reorganization.

19-00478-FPC11    Doc 586    Filed 02/04/20    Entered 02/04/20 15:01:51    Pg 1 of 3

1    2.    The Debtors, the Bank, and the Court agree that the "Prime Plus"

2    method described by the United States Supreme Court in *Till v. SCS Credit Corp.*,

3    541 U.S. 465, 479-80 (2004) is appropriate for determining the cram-down interest

4    rate.

5         3.    The Debtors and the Bank agree that the prime rate is presently 4.75%.

6    Moreover, they assert that the only remaining determination regarding the

7    appropriate interest rate to be used in the Debtors' proposed plan of reorganization is

8    what adjustment must be made to the prime rate in order to account for risk

9    associated with the case and the loan.

10         4.    Debtors argue that the appropriate cram-down interest rate is 6%.

11   Debtors argue that a 1.25% increase to the prime rate is appropriate for the risk in

12   this case, based on their use of conservative financial projections over the duration

13   of the plan and the likelihood of stable or increased profits over the 10-year period,

14   which each decrease the risk associated with the loan. Debtors primarily rely on *In*

15   *re Bellows*, 554 B.R. 219, 227 (Bankr. D. Alaska 2016), *In re Tapang*, 540 B.R. 701,

16   702 (Bankr. N.D. Cal. 2015), and testimony from Lucas Kartic in support of their

17   argument.

18         5.    The Bank argues that the appropriate cram-down interest rate should be

19   set at 7.75%. This interest rate includes the highest risk factor available under the

20   *Till* analysis. The Bank cites the length of the plan, the volatility of the dairy market,

1 the Debtors' capital structure, and conflicting projections from Neal Gluckman (ECF

2 No. 550) when determining the appropriate risk factor to apply.

3       6.     Based on the record, testimony, applicable caselaw, and risk factors

4 including potential fluctuation in milk prices, the 10-year duration of the plan, and

5 the Debtors' history of problems with management, the Court finds that the

6 appropriate cram-down interest rate for use in the Debtors' proposed plan of

7 reorganization is 7% per annum.

8       7.     Setting the cram-down interest rate at 7% will have the effect of raising

9 the interest rate on some of the Debtors' loans while also lowering the interest rate

10 on others. For example, the contract interest rate on an equipment loan with a

11 balance of approximately $5,996.00 is currently 3.9% per annum, while the interest

12 rate on a credit card loan with a balance of approximately $39,004.83 is currently in

13 excess of 7% per annum.

14

15

16

17

18

19

20